IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DOKA USA, LTD.,

    Plaintiff,

       v.                CIVIL NO.: WDQ-10-1896

GATEWAY PROJECT MANAGEMENT,
LLC, *et al.*,

    Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Doka USA, Ltd. ("Doka") sued Gateway Project Management, LLC ("Gateway") and Sterling Construction Specialists, Inc. ("Sterling") for various contract and tort claims from Doka's delivery of equipment from Maryland to Pennsylvania. For the following reasons, Gateway's motion to dismiss for improper venue and lack of personal jurisdiction, or to transfer venue to the Eastern District of Pennsylvania, will be denied.

I.   Background[1]

Doka is a New Jersey corporation with its principal place of business in New Jersey. Am. Compl. ¶ 1. It manufactures and

---

[1] For Gateway's motion to dismiss for improper venue, "the facts must be viewed as [Doka] most strongly can plead them," and "all inferences must be drawn in [Doka's] favor." *Silo Point II LLC v. Suffolk Const. Co.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008).

For Gateway's motion to dismiss for lack of personal jurisdiction, all "disputed facts and reasonable inferences" are to be drawn in Doka's favor. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

rents construction equipment. Hardt Aff. ¶ 4. Doka maintains a facility (the "Maryland Facility"), from which it supplies rental equipment and related materials to the mid-Atlantic region. *Id.* The Maryland Facility is over five acres and includes a 30,000 square foot warehouse. *Id.* The Maryland Facility has 31 employees, and stores equipment worth about $18 million. *Id.*[2]

Gateway is a Pennsylvania limited liability company with its principal place of business there. Chowns Aff. ¶ 2. Gateway is a contractor and/or project manager on projects of various sizes. *Id.*

Sterling is a Pennsylvania corporation with its principal place of business there. Am. Compl. ¶ 3.

On May 20, 2009, the Franconia Sewer Authority, as owner, entered into a contract with Gateway, as general contractor (the "Prime Contract"). *Id.* ¶ 8. Under the Prime Contract, Gateway was to construct a wastewater treatment plant in Franconia, Pennsylvania (the "Project"). *Id.* That day, Gateway, as contractor, and the Guarantee Company of North America (the "Guarantee Company"), as surety, issued a payment bond to the Franconia Sewer Authority (the "Payment Bond"). ECF No. 7, Ex. 1A. Under the Payment Bond, Gateway and the Guarantee Company

---

[2] Doka and its predecessor have maintained a "substantial business presence" in Maryland for more than 34 years. Hardt Aff. ¶ 4. Doka spends "hundreds of thousands of dollars each year" on Maryland-based services and goods vendors. *Id.*

were jointly and severally obligated to the Franconia Sewer Authority to promptly pay those who supplied labor and materials to the Project. *See id.*

To perform some of its obligations under the Prime Contract, Gateway entered into a subcontract with Sterling. *Id.* ¶ 9. Sterling was to supply labor, equipment, and material for the Project. Chowns Aff. ¶ 7.

On June 23, 2009, Sterling entered into a contract with Doka (the "Sterling-Doka Contract"). Hardt Aff. ¶ 5; Am. Compl., Ex. 1.[3] Jack Hardt, Doka's manager for the mid-Atlantic region, was the last to sign the contract, which he did at the Maryland Facility. Hardt Aff. ¶ 5. Under the Sterling-Doka Contract, Sterling was to rent Project equipment from Doka, and pay a monthly fee. *See* Am. Compl., Ex. 1; Chowns Aff. ¶ 8. Sterling was to return all equipment to Doka. Am. Compl., Ex. 1 at 7 ¶ 20.

After the Sterling-Doka Contract was executed, Sterling asked Doka for an extension of credit for the payments required under that agreement. Hardt Aff. ¶ 6. Following its credit evaluation process, Doka requested references from Sterling. *Id.* On June 26, 2009, Matthew Chowns, Gateway's vice president,

---

[3] The Sterling-Doka Contract is governed by New Jersey law. Am. Compl., Ex. 1 at 7 ¶ 35.

faxed a positive reference to Doka at the Maryland Facility.
*Id.*; Chowns Aff. ¶ 2; ECF No. 12, Ex. 3.

Despite Chowns's reference, Doka refused to extend credit
to Sterling without a joint party check agreement. Hardt Aff. ¶
7. On September 30, 2009, Doka sent Sterling, and presumably
Gateway, a copy of its form joint party check agreement. *See
id.* That day, at the Maryland Facility, Doka received a modified
version of the form agreement from Chowns. *Id.*; ECF No. 12 at
15. Chowns had attempted to limit Gateway's liability. Hardt
Aff. ¶ 7. A Doka employee informed Gateway that the modifications
were unacceptable. *Id.* Doka e-mailed another form agreement to
Gateway. *Id.*

On October 1, 2009, at the Maryland Facility, Doka received
an unmodified version of the form agreement, signed by Sterling
and Gateway. *Id.* ¶ 8; ECF No. 12 at 15. On October 5, 2009, at
the Maryland Facility, Hardt signed the agreement (the "Joint
Party Check Agreement") on behalf of Doka. Hardt Aff. ¶ 8.
Under the Joint Party Check Agreement, Gateway agreed to pay
Doka with joint checks issued to Sterling and Doka. *See* Am.
Compl., Ex. 2.[4]

From October 8 to November 25, 2009, Doka timely delivered
about 150,000 pounds of equipment from the Maryland Facility to

---

[4] Gateway was to issue the joint checks in Pennsylvania. ECF No.
7 at 11.

the Project. Hardt Aff. ¶ 9. In December 2009, Sterling left the Project, apparently because of a payment dispute with Gateway. ECF No. 7 at 4; Sweeney Aff. ¶ 6. Doka was unaware that Sterling was no longer on the Project. *Id.*; ECF No. 7 at 2. Gateway then entered into a subcontract with an entity identified as "Carbon Concrete" to finish Sterling's work. Chowns Aff. ¶ 11.

By early January 2010, Doka had not received payment for the equipment supplied to the Project. Sweeney Aff. ¶ 5. On January 4, 2010, Doka faxed equipment invoices from its Maryland Facility to, among others, Gateway. *Id.*

Gateway asserts that while working on the Project, Carbon Concrete asked Doka to deliver certain equipment. ECF No. 7 at 4; Chowns Aff. ¶ 12.[5] Gateway asserts that Doka delivered the wrong equipment and informed Carbon Concrete that it could not deliver the proper equipment for at least one week. *Id.* ¶ 13; ECF No. 7 at 4. Then, "at the request of Carbon Concrete," Chowns hired a Pennsylvania trucking firm to pick up the equipment from the Maryland Facility. *Id.*, Ex. 1B; Chowns Aff. ¶ 13. On January 6, 2010, the firm picked up more than 11,100 pounds of equipment from the Maryland Facility. Hardt Aff. ¶ 9.

---

[5] Gateway does not identify any Carbon Concrete representatives who allegedly contacted Doka.

Doka's account of the events preceding the January 6, 2010 pick-up differs. Doka asserts that on January 5, 2010, Phil Barday called James Sweeney, Doka's account manager for the mid-Atlantic region. Sweeney Aff. ¶¶ 2, 6. Barday "represented" that he was Gateway's project manager, and ordered additional equipment for the Project. *Id.* ¶ 6. Sweeney "understood that Gateway was ordering the equipment under the terms of the [Sterling-Doka] Contract." *Id.* Barday told Sweeney that Gateway would send a truck for the equipment on January 6, 2010. *Id.* Doka asserts that it was never contacted by "Carbon Concrete," and its only contacts about the Sterling-Doka Contract were with persons representing Sterling or Gateway. *Id.* ¶ 7; ECF No. 12 at 8.

On January 7, 2010, Chowns sent a fax to Doka at the Maryland Facility, stating that Sterling had left the Project in December 2009. Am. Compl., Ex. 4 at 1. This was Doka's first notice of Sterling's departure. Hardt Aff. ¶ 11. Chowns explained that Gateway "had paid Sterling . . . all monies owed up to December 2009 for all materials, equipment, [and] labor," and asked Doka to "seek payment from Sterling . . . for any open issues." Am. Compl., Ex. 4 at 1. Instead of issuing joint checks to Doka and Sterling under the Joint Party Check Agreement, Gateway had directly paid Sterling. ECF No. 12 at 2.

6

On January 12, 2010, Leah Gianforte, a Maryland Facility employee, e-mailed Chowns "regarding the outstanding [payment]" for Doka's equipment. ECF No. 12, Ex. 5 at 1. That day, Chowns replied that he could provide Doka with information to file claims against Sterling, and Doka could retrieve its equipment from the Project that week. *Id.*

On January 13, 2010, Doka informed Gateway that it would send tractor trailers to get the equipment from the Project. Am. Compl., Ex. 5. Doka told Gateway that under the Sterling-Doka Contract, it was the renter's obligation to return the equipment, and Doka reserved its contract and Joint Party Check Agreement claims. *See id.*

On January 14 and 15, 2010, Chowns e-mailed Cathy Cavalcante, a Maryland Facility employee, that Doka could get its equipment on January 19, 2010. Compl., Ex. 6; ECF No. 12, Ex. 8. On January 19, 2010, Doka sent Sweeney and three tractor trailers to the Project. Sweeney Aff. ¶ 8. Upon arrival, Barday informed Sweeney that Doka's equipment was not ready for pick up. Sweeney Aff. ¶ 8.

On January 27, 2010, Carbon Concrete, LLC was formed in Pennsylvania. ECF No. 12, Ex. 4A (certificate of organization).

In late January and February 2, 2010, Barday contacted Gianforte to confirm when Doka could get its equipment. Gianforte Aff. ¶ 5; ECF No. 12, Ex. 9 at 1. On January 28, 29 and February

3, 2010, Doka retrieved the equipment that was ready for pick up. Hardt Aff. ¶ 12; Amen. Compl. ¶ 22. However, Doka equipment worth $13,062.41 was unavailable for pick up, and has not been returned to Doka. Am. Compl., Ex. 7; Hardt Aff. ¶ 13. Also, returned equipment worth $14,210.79 is damaged beyond repair. *See id.* Doka's "voluminous" records "relating to the equipment supplied to the Project [and] the condition of the damaged equipment returned to Doka" are maintained at the Maryland Facility. ECF No. 12 at 26, 30.

On March 12, 2010, Doka demanded payment from Gateway for equipment supplied under the Sterling-Doka Contract and in reliance on the Joint Party Check Agreement. Hardt Aff. ¶ 14. The principal amount due under the agreements is $98,667.93. Am. Compl. ¶ 23. Neither Sterling nor Gateway has paid Doka. *Id.*; Hardt Aff. ¶ 4.

On July 13, 2010, Doka sued Sterling[6] and Gateway[7] for various contract and tort claims related to the equipment it supplied to

---

[6] For breach of the Sterling-Doka Contract, *quantum valebant*, and unjust enrichment. *Quantum valebant* "is an equitable theory of recovery intended to prevent unjust enrichment when there is an implied agreement to pay for what was provided." *ABB, Inc. v. Pena*, No. L-10-83, 2011 WL 906651, at *3 (S.D. Tex. Mar. 15, 2011). No attorney for Sterling has entered an appearance.

[7] For breach of the Joint Party Check Agreement, adoption and breach of the Sterling-Doka Contract, *quantum valebant*, unjust enrichment, equitable lien, intentional and negligent misrepresentation, and conversion.

the Project.[8]  On October 18, 2010, Gateway moved to dismiss for improper venue and lack of personal jurisdiction, or to transfer venue.  ECF No. 7.[9]  On November 12, 2010, Doka opposed that motion.  ECF No. 12.

II.  Analysis

  A. Gateway's Motion to Dismiss for Improper Venue

    1. Standard of Review

When jurisdiction is based on diversity, venue is proper in a district "in which a substantial part of the events or omissions giving rise to the claim occurred[.]"  28 U.S.C. § 1391(a)(2). Under Fed. R. Civ. P. 12(b)(3), a complaint may be dismissed for improper venue.  In considering such a motion, courts must "review the entire sequence of events" underlying the claims.  *Power Paragon, Inc. v. Precision Tech. USA, Inc.*, 605 F. Supp. 2d 722, 726 (E.D. Va. 2008).  It is sufficient that a substantial part of the events occurred in a district, "even if a greater part of the events occurred elsewhere."  *Id.*  All inferences must be drawn in the plaintiff's favor, and "the facts must be viewed as [it] most strongly can plead them."  *Silo Point*, 578 F. Supp. 2d at 809.

---

[8] On July 15, 2011, Doka filed an amended complaint alleging that Gateway's members are Pennsylvania citizens.  Am. Compl. ¶ 2. Thus, jurisdiction is based on diversity.

[9] As requested by Gateway, its motion to dismiss the original complaint will be construed as a motion to dismiss the amended complaint.  ECF No. 20.

2. Gateway's Motion

In moving to dismiss for improper venue, Gateway argues that the "only connection" this case has to Maryland is that Doka maintains the Maryland Facility, and Gateway picked up equipment there on January 6, 2010.  ECF No. 7 at 6.  Doka asserts that venue is proper.  *See* ECF No. 12 at 25-27 n.62.

Doka claims that although it provided equipment for the Project, it has not been paid, and some of its equipment is damaged and has not been returned.[10]  Although Doka supplied the equipment to the Project in Pennsylvania, all the equipment was sent from the Maryland Facility.  Hardt Aff. ¶ 9.  Thus, substantial events giving rise to Doka's claims occurred in this District.[11]  Accordingly, Gateway's motion to dismiss for improper venue will be denied.

B. Gateway's Motion to Dismiss for Lack of Personal Jurisdiction

1. Standard of Review

Under Fed. R. Civ. P. 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction.  The party asserting the claim bears the burden of proving personal jurisdiction.

---

[10] *See* Am. Compl. ¶¶ 27, 34, 41, 44, 51, 58, 64, 68, 74, 81, 88; Hardt Aff. ¶ 13.

[11] *See, e.g., Translinear, Inc. v. Rep. of Haiti*, 538 F. Supp. 141, 144-45 (D.D.C. 1982) (a substantial part of the events gave rise to an action in a district where, *inter alia*, some of the services for which plaintiff sought payment from defendant were performed through plaintiff's offices in that district).

*Carefirst*, 334 F.3d at 396.[12]  It must make a *prima facie* showing of personal jurisdiction when the district court decides jurisdiction on motion papers and the allegations in the complaint. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009).  The Court "take[s] all disputed facts and reasonable inferences in favor of the plaintiff."  *Carefirst*, 334 F.3d at 396.[13]

A federal district court may assert specific personal jurisdiction over a non-resident when the exercise of jurisdiction is (1) authorized by the forum state's long-arm statute, and (2) consistent with due process.  *Id.*

2. The Parties' Arguments

In moving to dismiss for lack of personal jurisdiction, Gateway asserts that it has never transacted business or committed a tort in Maryland, and has no offices or property here. *See* ECF No. 7 at 2, 9; Chowns Aff. ¶ 4.  Doka asserts that

---

[12] Personal jurisdiction may be general or specific.  General jurisdiction requires the defendant's "continuous and systematic" contacts with the forum state.  *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000).  Specific jurisdiction requires that the defendant's "contacts relate to the cause of action and create a substantial connection with the forum state."  *Id.*  Doka contends that there is specific jurisdiction over Gateway.  ECF No. 12 at 12.

[13] *See also Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (in considering a Rule 12(b)(2) motion, courts must "assume credibility, and draw the most favorable inferences for the existence of jurisdiction").

jurisdiction over Gateway comports with Maryland's long-arm
statute and due process. ECF No. 12 at 12.

   3. Maryland's Long-Arm Statute

   Maryland's long-arm statute limits jurisdiction to claims
"arising from any act enumerated [in the statute]." Md. Code
Ann., Cts. & Jud. Proc. § 6-103(a). Thus, the plaintiff must
show that the defendant's activity is within a provision
authorizing jurisdiction. *Ottenheimer Publishers, Inc. v.*
*Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). If so,
"the reach of the statute extends to the outermost boundaries of
the due process clause." *Id.* (citation and internal quotation
marks omitted).

      a. Section 6-103(b)(6)

   In relying on the Payment Bond, Doka argues that Gateway is
subject to jurisdiction as one who "[c]ontract[ed to] act as
surety for [any] contract . . . executed . . . within the State[.]"
Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(6); ECF No. 12 at
22-23; ECF No. 7, Ex. 1A. Gateway asserts that the Payment Bond
names the Guarantee Company as a surety and Gateway as the mere
contractor/principal. ECF No. 7 at 12.

   A surety is a "person who binds himself for the payment . .
. for another." *Nat'l Union Fire Ins. Co. of Pittsburgh v.*
*David A. Bramble, Inc.*, 388 Md. 195, 205-06, 879 A.2d 101, 107
(2005). Although Gateway is not identified as a "surety" under

                             12

the Payment Bond, Gateway and the Guarantee Company were jointly and severally obligated to pay those who supplied labor and materials to the Project. *See* ECF No. 7, Ex. 1A. In drawing all reasonable inferences in favor of Doka, the Payment Bond bound Gateway to pay Sterling's debt to Doka under the Sterling-Doka Contract. *See Bramble*, 388 Md. 195 at 205-06, 879 A.2d at 107. Gateway has not countered Doka's argument that "being identified as the principal under the [Payment Bond] does not change its *legal status* as a surety[.]" ECF No. 12 at 23 (emphasis added).

The Sterling-Doka Contract was executed in Maryland because Doka was the last to sign it, and did so at the Maryland Facility.[14] Thus, Gateway contracted to act as a surety for a contract executed here. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(6). Doka's claims all stem from its supply of equipment under the Sterling-Doka Contract or under the guise of that agreement when Gateway picked up the equipment in Maryland on January 6, 2010. *See supra* Part II.A.2; ECF No. 12 at 20. Accordingly, Gateway is subject to jurisdiction under Section 6-103(b)(6). *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(a).

b. Section 6-103(b)(3)

Doka also argues that Gateway is subject to jurisdiction as

---

[14] *See* ECF No. 12 at 20; Hardt Aff. ¶ 8; Compl., Ex. 1; *English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990) (the last party to sign the contract executed it).

one who "causes tortious injury in [Maryland] by an act or omission in [Maryland]." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3); ECF No. 12 at 20. Doka asserts that on January 6, 2010, Gateway converted more than 11,100 pounds of equipment from the Maryland Facility; *i.e.*, Gateway unlawfully picked up the equipment under "the guise of the [Sterling-Doka] Contract." *Id.*; *see also* Am. Compl. ¶¶ 84-91. Gateway argues that "[a]ny conversion of equipment . . . occurred at the Project in Pennsylvania." ECF No. 7 at 9.

Injury from conversion occurs where the conversion takes place. *See, e.g.*, *Fluxo-Cane Overseas Ltd. v. E.D. & F. Man Sugar Inc.*, 599 F. Supp. 2d 639, 643 (D. Md. 2009). If Gateway tortiously injured Doka in Maryland, it must have committed the conversion here. *See id.*[15]

---

[15] Maryland law applies to the conversion claim. In a diversity case, the choice of law rules are those of the state in which the district court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In tort cases, Maryland follows *lex loci delicti*, which applies the law of the place where the injury occurred. *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 615, 911 A.2d 841, 845 (2006). As explained above, the injury resulting from conversion occurs where the conversion takes place. *See, e.g.*, *Fluxo-Cane*, 599 F. Supp. 2d at 643. As will be explained in this Part, Gateway converted Doka's equipment in Maryland; thus, Doka was injured in Maryland, and this State's law applies. Gateway does not dispute the applicability of Maryland law.

Under Maryland law, conversion is a tort consisting of "a physical act combined with a certain state of mind." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 261, 841 A.2d 828, 835 (2004). The physical act is "any distinct act of ownership . . . over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v.*

14

There is no dispute that Gateway acquired more than 11,100 pounds of Doka's equipment from the Maryland Facility on January 6, 2010. *See* ECF No. 12 at 20.[16] The question is whether Gateway's intent to pick up the equipment was "in fact" inconsistent with Doka's rights. *Keys*, 303 Md. at 414, 494 A.2d at 208. Gateway asserts that it was "forced" to pick up the equipment because Doka agreed to provide certain equipment to "Carbon Concrete,"[17] but failed to do so. ECF No. 7 at 10; Chowns Aff. ¶¶ 10-13.[18] However, as Doka notes, without opposition: Doka has never been contacted by Carbon Concrete; Doka was only contacted by representatives of Sterling and Gateway about supplying equipment under the Sterling-Doka Contract; when Barday called Sweeney at the Maryland Facility to order the additional equipment, Barday represented that he was

---

*Jasen*, 354 Md. 547, 560, 731 A.2d 957, 963 (1999). The act of ownership may occur by "initially acquiring the property." *Darcars*, 379 Md. at 261, 841 A.2d at 835. The intent required need not be "conscious wrongdoing," but merely "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414, 494 A.2d 200, 208 (1985).

[16] If Gateway argues that it sent an independent trucker to the Maryland Facility to acquire the equipment, Doka reasonably assumed that the trucker was Gateway's agent. *See infra* Part II.B.4.a.

[17] If Gateway is referring to Carbon Concrete, LLC, that entity was not formed until January 27, 2010--after the pick-up. ECF No. 12, Ex. 4-A.

[18] Gateway does not identify the Carbon Concrete employee who allegedly spoke to Doka.

15

Gateway's project manager; Sweeney understood that Gateway was ordering the equipment under the Sterling-Doka Contract; and Doka only learned on January 7, 2010 that Sterling had left the Project, and had been replaced by Carbon Concrete. Sweeney Aff. ¶¶ 6-7; Hardt Aff. ¶ 11; ECF No. 12 at 8.

Gateway's intent to acquire the equipment from the Maryland Facility on behalf of itself or Carbon Concrete was inconsistent with Doka's rights under the Sterling-Doka Contract; under that agreement, Doka had contracted only with Sterling to supply equipment, not Carbon Concrete and/or Gateway. *See* Chowns Aff. ¶ 8; Am. Compl., Ex. 1.

Further, although Gateway asserts that any conversion occurred in Pennsylvania, conversion may occur when the defendant "initially acquir[es] the property." *Darcars*, 379 Md. at 261, 841 A.2d at 835. Thus, as Doka notes, without opposition, "Gateway's conversion occurred as soon as it took Doka's equipment [from the Maryland Facility]." ECF No. 12 at 21. Accordingly, Gateway is also subject to specific personal jurisdiction under Section 6-103(b)(3). *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(a).

4. Due Process

Due process requires that the defendant have "minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

16

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). In determining whether the exercise of specific personal jurisdiction comports with due process, a court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397. Even a "single contact" may be sufficient if these elements are met. *Id.*

Doka asserts that Gateway's contacts with Maryland vest this Court with jurisdiction over Gateway. ECF No. 12 at 16. Gateway asserts that it has not had minimum contacts with Maryland. ECF No. 7 at 11.

a. Purposeful Availment

In determining whether the defendant has engaged in purposeful availment of a state, courts consider "various nonexclusive factors":

> (1) whether the defendant maintains offices or agents in the forum state, (2) owns property in the forum state, (3) reached into the forum state to solicit or initiate business, (4) deliberately engaged in significant or long-term business activities in the forum state, and (5) made in-person contact with the resident of the forum in the forum state regarding the business relationship; (6) whether the parties contractually agreed that the law of the forum state would govern disputes; (7) the nature, quality[,] and extent of the

parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

*Geometric*, 561 F.3d at 278 (citations omitted).

Making all reasonable inferences in favor of Doka, Gateway engaged in significant business activities in Maryland. *See Carefirst*, 334 F.3d at 396. Gateway entered into the Joint Party Check Agreement that "[Doka], as the last party to sign, executed in [Maryland]."[19] Gateway also sent a truck to the Maryland Facility for more than 11,100 pounds of Doka's equipment. Hardt Aff. ¶ 9. Doka asserts, without opposition, that Barday represented that he was Gateway's project manager when ordering the equipment. Sweeney Aff. ¶ 6.[20]

Further, the nature, quality, and extent of the parties' communications support jurisdiction because there is a "trail"[21] of exchanges between Gateway and the Maryland Facility about the

---

[19] *Metzger*, 901 F.2d at 39 (although the defendant signed the contract at issue in California, that the plaintiff, as the last party to sign, executed the contract in Virginia supported jurisdiction in Virginia); Hardt Aff. ¶ 8; Am. Compl., Ex. 2.

[20] Gateway similarly has not countered Doka's argument that Gateway picked up the additional equipment from the Maryland Facility "[u]nder the guise of the [Sterling-Doka] Contract," which was also executed by Doka in Maryland as the last party to sign. *See* ECF No. 12 at 20; Hardt Aff. ¶ 8; Compl., Ex. 1; *Metzger*, 901 F.2d at 39.

[21] *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, --- F. Supp. 2d ----, 2011 WL 2652257, at *5 (D. Md. July 7, 2011).

Joint Party Check Agreement[22] and the 2009 and 2010 equipment Doka provided to the Project.[23]

Also, it is reasonable to conclude that Gateway made in-person contact with Doka at the Maryland Facility because it sent a trucker there on January 6, 2010 to pick up the additional equipment. *See* Hardt Aff. ¶ 8. Although Gateway sent an independent trucker, personal jurisdiction may be based on contacts by an agent.[24] Gateway has not countered Doka's assertion that

---

[22] Hardt Aff. ¶ 6; ECF No. 12, Ex. 3 (Chowns provided to Doka a reference for Sterling so Doka would extend credit to Sterling under the Sterling-Doka Contract); Hardt Aff. ¶ 7 (despite the reference, Doka requested a Joint Party Check Agreement); *id.* (Chowns sent Doka a modified version of the Joint Party Check Agreement that limited Gateway's liability); *id.* (Doka called Gateway and rejected the modification); *id.* (Doka sent Chowns a new Joint Party Check Agreement); *id.* ¶ 8 (Chowns signed the Joint Party Check Agreement without modifications and sent it to Doka); *id.* (Hardt executed the Joint Party Check Agreement at the Maryland Facility); *see, e.g., Pinpoint IT Servs., L.L.C. v. Atlas IT Export Corp.*, No. 2:10cv516, 2011 WL 2748685, at *5–*6 (E.D. Va. July 13, 2011) (Puerto Rico defendant engaged in purposeful availment in Virginia by, *inter alia*, negotiating a contract and "forwarding the final draft [to the plaintiff] in Virginia so that [the plaintiff] could execute it").

[23] Sweeney Aff. ¶ 5 (Doka faxed equipment invoices to Gateway); *id.* ¶ 6 (Barday, representing that he was Gateway's project manager, ordered more equipment); Am. Compl., Ex. 4 at 1 (Chowns faxed Doka a message that Sterling had left the Project, and that Doka should seek payment from Sterling); ECF No. 12, Exs. 5–6, 8–9; Am. Compl., Ex. 5; Gianforte Aff. ¶ 5 (the parties communicated about returning all of Doka's equipment and the payments owed to Doka).

[24] *See, e.g., Geometric*, 561 F.3d at 278 (purposeful availment considers, *inter alia*, "whether defendant maintains . . . agents in the forum state"); *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 534–35 (E.D. Va. 2009) (Virginia could have

19

Barday, Gateway's purported project manager, informed Doka that "Gateway would send a truck to [the] Maryland Facility . . . to pick up the newly-ordered equipment." Sweeney Aff. ¶ 6. Indeed, Gateway concedes that it "arranged for [the] truck[er] to go to Maryland" and acquire the equipment. Chowns Aff. ¶ 13. This indicates that Gateway appeared in Maryland by virtue of its agent--that is, the trucker it sent to the Maryland Facility.[25]

Further, regarding whether the performance of contractual duties was to occur in Maryland, Doka has asserted that Gateway adopted the Sterling-Doka Contract by picking up the equipment under the pretext of that agreement. ECF No. 12 at 20; Am. Compl. ¶ 50. Under the Sterling-Doka Contract, all equipment was to be "return[ed]" to the Maryland Facility. *See* Am. Compl.,

---

asserted personal jurisdiction over non-resident defendants had a Virginia entity acted as their actual or apparent agent). An entity may be deemed an agent when the entity "reasonably appears to third persons, because of the manifestations of another, to be authorized to act as agent for such other." *Lynn v. Farm Bureau Mut. Auto. Ins. Co.*, 264 F.2d 921, 924 (4th Cir. 1959).

[25] Even if Gateway had not entered Maryland, in-person contacts are not dispositive; "a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). *See, e.g.*, *McNeil v. Sherman*, No. 2:09-CV-00979-PMD, 2009 WL 3255240, at *4-*5 (D.S.C. Oct. 7, 2009) (South Carolina had personal jurisdiction over defendant, who had "never physically visited" that state, because, *inter alia*, the defendant contacted the plaintiff there via mail and telephone (*citing*, *inter alia*, *Burger King*, 471 U.S. at 476)).

Ex. 1 at 7 ¶ 20; ECF No. 12 at 5. In drawing all reasonable inferences in Doka's favor, when Gateway picked up the equipment--apparently under the Sterling-Doka Contract--it was obligated to return it to the Maryland Facility under that contract. *See id.*

Regarding the remaining factors, that Gateway maintains no offices, permanent agents, or property here[26] is "simply not enough to overcome the other factors noted above." *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 678 (D. Md. 2010). Also, although Gateway did not initiate the Project business relationship with Doka, Gateway was "not lured unwittingly into Maryland."[27] Indeed, Chowns signed the Joint Party Check Agreement and sent it to the Maryland Facility, and arranged for a truck to pick up more than 11,100 pounds of equipment there. Chowns Aff. ¶ 13; Hardt Aff. ¶¶ 8-9. Notably, the Joint Party Check Agreement does not indicate the state law governing it. *See* Am. Compl., Ex. 2.

Viewed in the light most favorable to Doka, it has established that Gateway purposefully availed itself of the privilege of conducting activities in Maryland. *See Carefirst*, 334 F.3d at 397.

---

[26] ECF No. 7 at 1-2; *see* Chowns Aff. ¶ 4.

[27] *Bistro of Kan. City, Mo., LLC v. Kan. City Live Block 125*, No. ELH-10-2726, 2011 WL 1063800, at *13 (D. Md. Mar. 18, 2011).

### b. Whether Doka's Claims Arise Out of Gateway's Maryland Contacts

As explained in Part II.B.4.a, Gateway's contacts include entering into the Joint Party Check Agreement, which was executed in Maryland. Hardt Aff. ¶ 8; ECF No. 12 at 21. Gateway also picked up more than 11,100 pounds of equipment from the Maryland Facility, which Doka asserts without opposition was under the pretext of the Sterling-Doka Contract. Hardt Aff. ¶ 9; ECF No. 12 at 20. All of Doka's claims rest on allegations that it supplied equipment under the Sterling-Doka Contract and in reliance on the Joint Party Check Agreement, but has not been paid, and some of its equipment has been damaged or unreturned. *See* discussion *supra* p. 10 & n.10. Thus, "[t]he second prong is satisfied [because the] forum-related contacts that [Doka] discusses . . . relate directly to the Complaint." *Maoz*, --- F. Supp. 2d ----, 2011 WL 2652257, at *5.

### c. Constitutional Reasonableness

In considering the final due process inquiry, constitutional reasonableness, the defendant must "present a compelling case" that jurisdiction would be unreasonable. *Burger King*, 471 U.S. at 477. The Court considers:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the

interests of the states in furthering substantive social
policies.

*Geometric*, 561 F.3d at 279 (*citing Burger King*, 471 U.S. at 477).

Gateway asserts that it would be burdened by defending this
case in Maryland because most of its witnesses are in Pennsylvania.
*See* ECF No. 7 at 2. Because "[m]ere claims of distance and
inconvenience are properly handled in a motion for a change of
venue, not a denial of personal jurisdiction," *Chung v. NANA Dev.
Corp.*, 783 F.2d 1124, 1132 (4th Cir. 1986), these concerns will
be addressed in Part II.C (discussing Gateway's motion to transfer
venue). It should be noted that requiring Gateway's witnesses
to come to Maryland is "no more burdensome" than requiring
Doka's Maryland Facility witnesses to travel to Pennsylvania.[28]
Also, Gateway is represented by Baltimore counsel. ECF No. 7 at
17.[29] Any burden on Gateway "would not be great." *Jones*, 752 F.
Supp. 2d at 679.

Maryland has an interest in adjudicating this litigation
because the alleged conversion occurred here, and the Joint

---

[28] *O'Donnell v. Animals Matter, Inc.*, No. 3:07-CV-00241-FDW, 2007
WL 2781218, at *3 (W.D.N.C. Sept. 21, 2007) (North Carolina had
personal jurisdiction over defendant even though he and his
witnesses would be required to travel from California; the
burden of traveling to North Carolina "was insufficient to
demonstrate that [the c]ourt's exercise of personal jurisdiction
[was] unconstitutionally unreasonable or unfair").

[29] *Jones*, 752 F. Supp. 2d at 679 (Virginia defendant would not be
burdened by litigating in Maryland because, *inter alia*, it had
"secured local counsel").

Party Check Agreement--upon which Doka relied when supplying all equipment from the Maryland Facility--was executed here.[30] Doka would obtain convenient and effective relief in Maryland because a plaintiff's initial choice of forum is generally "entitled to substantial weight,"[31] and Doka has retained Baltimore counsel.[32] The interest of the interstate judicial system in obtaining an efficient resolution "militates against requiring [Doka] to file its suit all over again,"[33] especially because "inspections . . . and discovery relating to the . . . damage[d equipment]"[34] will presumably be conducted at the Maryland Facility. The interests of the states in advancing substantive social policies are not implicated in this case. Thus, Gateway has not shown that Maryland jurisdiction would be constitutionally unreasonable.

---

[30] *See, e.g.*, *CSS Antenna, Inc. v. Amphenol-Tuchel Elecs., GmbH*, 764 F. Supp. 2d 745, 751 (D. Md. 2011) (Maryland had an interest in adjudicating a dispute when the cause of action occurred here); *Young Again Prods., Inc. v. Acord*, 307 F. Supp. 2d 713, 717-18 (D. Md. 2004) ("Maryland has an interest in providing a forum for the adjudication of claims of breach of contract . . . which purportedly stem from a contract formed in Maryland[.]"); Hardt Aff. ¶ 8; *supra* Part II.B.3.b.

[31] *Jones v. Frazier*, No. 1:09CV513, 2009 WL 2601355, at *7 (E.D. Va. Aug. 18, 2009) (citation and internal quotation marks omitted).

[32] *Motley Rice, LLC v. Baldwin & Baldwin, LLP*, 518 F. Supp. 2d 688, 696 (D.S.C. 2007); *see* ECF No. 12 at 33.

[33] *Nueva Eng'g, Inc. v. Accurate Elecs., Inc.*, 628 F. Supp. 953, 957 (D. Md. 1986).

[34] *Campbell v. Johnson & Towers, Inc.*, 123 F. Supp. 2d 329, 337 (D.S.C. 1999).

Accordingly, Doka has made a *prima facie* showing of personal jurisdiction over Gateway in Maryland. *See Geometric*, 561 F.3d at 276. Gateway's motion to dismiss for lack of personal jurisdiction will be denied.

C. Gateway's Motion to Transfer Venue to the Eastern District of Pennsylvania

1. Standard of Review

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Unless the balance of these factors is "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984). The moving party has the burden to show that transfer to another forum is proper. *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

In considering a motion to transfer, the Court first asks whether the action could have been brought in the transferee district. *See Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008).[35] If so, the Court balances: "(1) the weight

---

[35] Transfer is proper if the transferee court is a proper venue and has personal jurisdiction over each defendant. *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). The parties do not dispute that this case could have been brought in the Eastern District of Pennsylvania. However,

accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *Lynch*, 237 F. Supp. 2d at 617. The decision to transfer turns on the "particular facts" of the case, and is committed to the Court's discretion. *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 632 (E.D. Va. 2006); *Lynch*, 237 F. Supp. 2d at 617.

2. Gateway's Motion

Gateway moves to transfer this case to the Eastern District of Pennsylvania. ECF No. 7 at 13. Doka asserts that venue is proper in this District. ECF No. 12 at 3.

a. Weight Accorded to Doka's Choice of Venue

A plaintiff's choice of forum is "ordinarily accorded considerable weight" when the forum has a "connection with the matter in controversy." *Dicken v. United States*, 862 F. Supp. 91, 92-93 (D. Md. 1994). Gateway argues that Doka's complaint "relates entirely to . . . its services rendered for the Project in Pennsylvania." ECF No. 7 at 14. Doka asserts that "[t]his entire litigation is based upon equipment [it] maintained and rented . . . from its Maryland Facility." ECF No. 12 at 26.

That Doka's equipment was to be used for the Project is only tangentially related to this case. As explained above, all

---

as will be explained in this Part, the balance of factors does not support transfer.

of Doka's claims relate to its allegations that: Doka provided
equipment from the Maryland Facility under the Sterling-Doka
Contract and in reliance on the Joint Party Check Agreement;[36]
and Doka has not been paid for that equipment, some of which has
been damaged or is missing. *See supra* Part II.A.2. Thus,
Maryland has a connection to the matter in controversy. *See*
*Dicken*, 862 F. Supp. at 92-93.

Further, Doka asserts that "voluminous" records relating to
the equipment supplied to the Project and the condition of the
damaged equipment are housed in the Maryland Facility. ECF No.
12 at 26, 30. This also suggests that Doka's choice of venue
should not be disturbed.[37]

b. Witness Convenience and Access

The party asserting witness inconvenience must submit
affidavits from the witnesses "detailing" the hardships they
would suffer in the chosen forum. *Helsel v. Tishman Realty &*
*Const. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002); *Dow v.*
*Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002). "Mere assertions
of inconvenience or hardship" are insufficient. *Id.* The moving

---

[36] Both contracts were executed here because Doka was the last
party to sign them, at the Maryland Facility. Hardt Aff. ¶¶ 5, 8;
Am. Compl., Exs. 1-2; *see Metzger*, 901 F.2d at 39.

[37] *See, e.g.*, *La Casa Real Estate & Inv., LLC v. KB Home of S.C.,*
*Inc.*, No. 1:09CV895, 2010 WL 2649867, at *4 (M.D.N.C. June 30,
2010) (venue was proper in the forum where, *inter alia,* the
relevant records were located).

party must also provide details regarding the witnesses' "potential testimony to enable the [C]ourt to assess the materiality of evidence and the degree of inconvenience." *Koh*, 250 F. Supp. 2d at 636.

On behalf of Gateway, Chowns has sworn that "any witness that would have knowledge of the performance of Doka, Gateway[,] and Sterling at the Project reside in Pennsylvania," and employees of those entities, the Franconia Sewer Authority, and Carbon Concrete "are all located in Pennsylvania." Chowns Aff. ¶ 16. Performance on the Project is only marginally related to the claims. Also, Gateway has not identified any witnesses, or detailed their expected hardships or testimony. Further, Gateway and Sterling are defendants, and "[i]nconvenience to party-witnesses is given less weight because they are presumed to be more willing to travel to testify than non-party witnesses."[38]

Gateway also asserts that its Pennsylvania witnesses are beyond the geographic reach of the Court's subpoena power. ECF No. 7 at 14. However, a moving party must show that its witnesses are "unwilling to travel to testify[; the] mere assertion that

---

[38] *Laureate Educ., Inc. v. Megahed*, No. AW-10-749, 2010 WL 2651895, at *10 (D. Md. July 1, 2010) (*citing Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005)).

Doka "suspects that [Carbon Concrete's] representatives and employees . . . will ultimately be deemed [Gateway's] employees"; if not, Doka intends to add Carbon Concrete as a defendant. ECF No. 12 at 29.

the [C]ourt has no power to subpoena [a] witness is unavailing."
*Laureate*, 2010 WL 2651895, at *10 (*citing Samsung*, 386 F. Supp.
2d at 718). Further, Gateway has not shown that alternatives to
live testimony, such as video depositions, would be inadequate.
*St. Paul Fire & Marine Ins. Co. v. Renne Acquisitions Corp.*,
Nos. 3:09cv476-RJC-DSC, 3:09cv511-RJC-DCK, 2010 WL 2465543, at
*4 (W.D.N.C. June 14, 2010). Gateway has not shown that witness
inconvenience favors transfer.

      c. Convenience of the Parties

    Because the "time and distance" to travel between this
District and the Eastern District of Pennsylvania is "essentially
the same," this factor is "essentially neutral." *Lynch*, 237 F.
Supp. 2d at 618 (discussing the "relative closeness" of Baltimore
and Philadelphia, also in the Eastern District of Pennsylvania).

      d. Interest of Justice

    A court's "familiarity with applicable law" is a factor to
consider in the interest of justice analysis. *Id.* Gateway
asserts that Doka's claims are governed by New Jersey or
Pennsylvania law. ECF No. 7 at 16. However, as Doka notes,
some counts are governed by Maryland law.[39] ECF No. 12 at 31-32.

---

[39] For example, Maryland law applies to Doka's claim for breach
of the Joint Party Check Agreement. *See* Am. Compl. ¶¶ 43-48;
ECF No. 12 at 31-32. Maryland follows the *lex loci contractus*
rule, under which "the law of the jurisdiction where the
contract was made controls its validity and construction."
*Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390, 535 A.2d

The Joint Party Check Agreement was made in Maryland because Doka was the last party to sign it, and did so here.[40] Similarly, Maryland law governs Doka's conversion claim because the purported conversion occurred in Maryland. *See* Am. Compl. ¶¶ 84-91; *supra* Part II.B.3.b. Further, Maryland has a factual relationship to this case because all of Doka's claims relate to the equipment that it supplied from the Maryland Facility.[41]

Although the remaining claims likely involve Pennsylvania or New Jersey law, this "do[es] not present a problem[; t]he nature of federal practice requires the Court to routinely interpret laws from jurisdictions across the nation."[42]

On balance, Gateway has not met its burden to show that transfer to the Eastern District of Pennsylvania would be

---

466, 467 (1988). For choice-of-law purposes, "a contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002).

[40] Hardt Aff. ¶ 8; *see, e.g.*, *Solid Concepts, LLC v. Fallen Soldiers, Inc.*, No. DKC-09-2377, 2010 WL 3123269, at *1 n.1 (D. Md. Aug. 9, 2010) (applying Maryland law to contract claim because "the last act necessary to make the contract binding between [the parties] occurred in Maryland, where [the defendant's agent] signed the [contract]").

[41] *See, e.g.*, *Elliot AmQuip, LLC v. Bay Elec. Co.*, No. ELH-10-3598, 2011 WL 2174893, at *13 (D. Md. June 2, 2011) (because the litigation lacked a "factual connection" to Maryland, the interest of justice factor tilted in favor of transfer); *supra* Part II.A.2.

[42] *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 739 (E.D. Va. 2007) (declining to transfer case from Virginia to Illinois despite potential application of Illinois law).

proper. *See Lynch*, 237 F. Supp. 2d at 617. Gateway's motion to transfer venue will be denied.

III. Conclusion

For the reasons stated above, Gateway's motion to dismiss for improper venue and lack of personal jurisdiction, or to transfer venue, will be denied.

_____
Date  7/25/11

_____
William D. Quarles, Jr.
United States District Judge